IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **GREGORY HOFFMAN, # 84958-054,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 13-cv-852-GPM |
| | ) |
| **FEDERAL BUREAU of PRISONS,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, an inmate in the United States Penitentiary at Marion ("Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff is serving a 300-month sentence for transporting child pornography and stalking. Through this action, he seeks an order requiring the Federal Bureau of Prisons ("BOP") to allow him to use the prison's electronic public messaging service. Access to this method of correspondence with persons outside the prison is generally available to federal prisoners, however, Plaintiff has been prohibited from using this system because of the nature of his offense. This action is before the Court for a threshold review of the complaint pursuant to 28 U.S.C. § 1915A.

### The Complaint

Prior to bringing this *Bivens* action, Plaintiff filed a petition for a writ of habeas corpus in which he sought the identical relief. *Hoffman v. Federal Bureau of Prisons*, Case No. 13-cv-669-DRH (S.D. Ill. filed July 23, 2013). That case was dismissed because it was a challenge to the conditions of Plaintiff's confinement, rather than the fact or duration of such confinement. In

the instant complaint, in lieu of a statement of claim, Plaintiff incorporated this Court's order dismissing the habeas action (Doc. 1, pp. 4-9). He also includes his request for administrative remedy and the warden's response (Doc. 1, pp. 10-11).

Plaintiff's administrative remedy request challenges the constitutionality of the policy under which he was denied permission to use electronic messaging. He argues that he has never violated any BOP policy, and is being "presumed guilty" (Doc. 1, p. 10). In his memorandum of law (Doc. 10), he points out that the BOP has safeguards in place which are sufficient to prevent abuse of the electronic messaging service, making it unnecessary to impose a complete ban on its use. For example, prison officials can monitor incoming and outgoing messages, and must obtain prior approval from a prospective recipient before an inmate is allowed to send the person any messages. He claims the BOP's prohibition on sex offenders' use of the messaging system "burdens a 'substantially broader' than necessary group of sex offenders who do not intend to use the system or service in an illicit way" (Doc. 1, p. 10).

The Marion warden responded to Plaintiff's grievance by citing BOP Program Statement 5265.12, which states "Inmates will be excluded from electronic messaging when it is determined that their use would threaten the safety, security, orderly running of the institution or the protection of the public and staff" (Doc. 1, p. 11). In denying Plaintiff's request, the warden continued:

> Additional guidance further states, 'Only inmates whose offense conduct or personal histories include using electronic messaging to solicit or accomplish offensive conduct with a victim should be restricted.' Information in your Presentence Report indicates your offense conduct involved the use of email to communicate by stalking a minor victim by email as well [as] encouraging her to send pornographic photographs. This meets the criteria for excluding you from access to electronic messaging.

(Doc. 1, p. 11).

Plaintiff objects that he was not in fact convicted of stalking a minor victim, but instead, his conviction was for stalking an adult (Doc. 1, p. 10).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant. After fully considering the allegations in Plaintiff's complaint, the Court concludes that this action is subject to summary dismissal.

As an initial matter, the Federal Bureau of Prisons ("the BOP") is the only named defendant, however the BOP is not amenable to suit in a *Bivens* action, which is a mechanism to seek redress for constitutional violations perpetrated by *persons* acting under the color of federal authority. The BOP is not a "person," but instead is an agency of the federal government. Even if Plaintiff had named the Marion warden or another official as a defendant in this action, he still failed to state a constitutional claim.

  A. **Program Statement Number P5265.13**

The BOP Program Statement cited by the Marion warden, No. 5265.12, was superseded by BOP Program Statement Number P5265.13 (adopted Feb. 19, 2009), which governs the Trust Fund Limited Inmate Computer System (TRULINCS)—otherwise known as Electronic Messaging.[1] However, the sections of the policy pertinent to Plaintiff's claim were unchanged. The policy states, "Use of the TRULINCS is a privilege; therefore, the Warden or an authorized representative may limit or deny the privilege of a particular inmate." PS P5265.13, § 2, p. 2. Section 3 governs "TRULINCS Restrictions," and provides that if an inmate is excluded from

---

[1] A link to this document can be found at the BOP Policy Locator web page: http://www.bop.gov/DataSource/execute/dsPolicyLoc (last visited Sept. 27, 2013). For brevity, the Court shall refer herein to this Policy Statement as PS P5265.13.

the program, he must (with certain exceptions not relevant here) be notified in writing of the specific reason for his exclusion. PS P5265.13, § 3, p. 3. Further, "An inmate's exclusion from program participation must be based on his/her individual history of behavior that could jeopardize the legitimate penological interests listed above. Inmates must not be excluded from program participation based on general categorizations of previous conduct." PS P5265.13, § 3a, p. 3. Examples of personal history which would justify exclusion include "soliciting minors for sexual activity, or possession/distribution of child pornography through the Internet or other means," or "using computers/email/Internet or other communication methods as a conduit for committing illegal activities[.]" *Id*. Therefore, sex offenders are not automatically excluded from participation in TRULINCS; exclusion must be based on an individual's personal history, prior offense conduct, or conviction.

Under this policy, it appears that the warden's denial of Plaintiff's request to participate in TRULINCS was a reasonable exercise of his discretion as it was based on Plaintiff's own personal history of using email to stalk a victim and to solicit pornographic pictures. The Court reads the policy and guidelines to give the warden discretion to impose a restriction if the prior conduct involved either a minor or adult victim. Therefore, regardless of the age of the victim, the warden had the discretion to impose the restriction.

**B. Rights to Association and Communication**

More to the point, not every denial of a "privilege" amounts to a constitutional violation. A prison policy which restricts a prisoner's constitutional rights is valid if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89-91 (1987). Courts consider four factors in making this "reasonableness" inquiry: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as

its justification; (2) whether inmates have an alternative means of exercising the right; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. *Id*.

While prison inmates retain certain First Amendment rights during their incarceration, reasonable restrictions on those rights have withstood constitutional scrutiny. As the Supreme Court has observed:

> The very object of imprisonment is confinement. Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. . . . [citations omitted]. And, as our cases have established, freedom of association is among the rights least compatible with incarceration. [citations omitted]. Some curtailment of that freedom must be expected in the prison context.

*Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (restrictions on inmates' visitors were rationally related to legitimate penological objectives and did not violate the Constitution).

The ability of prisoners to communicate with outsiders through the U.S. mail enjoys substantial protection. *See Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (First Amendment "applies to communications between an inmate and an outsider"). Thus, prisoners have a First Amendment right both to send and receive mail in communication with private individuals outside prison, as well as to correspond with the courts and attorneys. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999).

However, prisoners' use of other means of communication is not guaranteed. For example, there is no constitutional right to unlimited telephone privileges. *See Sandin v. Connor*, 515 U.S. 472 (1995). Thus, regulations limiting telephone use by inmates have been routinely sustained as reasonable. *See*, *e.g*., *Arsberry v. Illinois*, 244 F.3d 558, 564 (7th Cir. 2001); *Pope v. Hightower*, 101 F.3d 1382, 1384-85 (11th Cir. 1996); *Washington v. Reno*, 35 F.3d 1093, 1100

(6th Cir. 1994); *Benzel v. Grammar*, 869 F.2d 1105, 1108 (8th Cir. 1989); *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir.1988); *Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir.1986); *Lopez v. Reyes*, 692 F.2d 15, 17 (5th Cir. 1982).

Here, Plaintiff complains about the policy that restricts the use of electronic messaging. However, the policy easily passes the reasonableness inquiry. PS P5265.13 has an obvious connection to the interests of protecting the public and maintaining prison security. Inmates have other alternative means of communication available to them, namely regular mail, telephone, and in-person visitations. To allow inmates, such as Plaintiff, to use TRULINCS would involve the use of prison resources to screen or monitor his electronic communications in order to ensure that safety and security concerns are not jeopardized. Moreover, prison officials are afforded substantial deference in making decisions about what actions or circumstances present a threat to prison security and inmate rehabilitation. *Pell v. Procunier*, 417 U.S. 817, 827 (1974).

In light of this, the warden's denial of Plaintiff's request to use the TRULINCS system does not amount to an unconstitutional infringement of Plaintiff's First Amendment right to communication or association. His past conduct directly relates to the improper use of electronic communications. He still has the ability to communicate with outsiders via regular mail, and may receive visitors. He may also have telephone privileges (the complaint did not mention any telephone restrictions). Although letter-writing may not be as efficient a means of communication as using the electronic mail service, the Constitution does not require that prison officials choose the least restrictive alternative. *Thornburgh v. Abbott,* 490 U.S. 401, 411 (1989); *see also Arsberry v. Illinois*, 244 F.3d 558, 564-65 (7th Cir. 2001) (high price of prison telephone calls that arguably curtail visiting by families who live far from prisons does not violate

Fourteenth Amendment due process rights).

The warden's denial of Plaintiff's request to use the TRULINCS system also does not amount to an unconstitutional infringement of Plaintiff's due process rights. The protections of the Due Process Clause come into play only if the claim involves deprivation of a protected interest in life, liberty, or property. As discussed above, a prisoner has no constitutionally protected interest to have access to electronic communications. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (a liberty interest is created only where prison regulations act to protect prisoners from an "atypical or significant hardship . . . in relation to the ordinary incidents of prison life."); *see also Jones v. Cross*, 637 F.3d 841, 846 (7th Cir. 2011) (BOP regulations do not give rise to a protected liberty interest). Moreover, Plaintiff was given notice and an explanation of the decision to restrict him from use of TRULINCS, and he appealed the decision using the BOP's administrative review process. Therefore, he has no cognizable due process claim.

Plaintiff also implies that he and other sex offenders are denied equal protection by the regulation that allows them to be excluded from access to TRULINCS. However, his own pleading demonstrates that he was denied this privilege due to his own individualized offense conduct and personal history, not because he is a member of a class of prisoners who have been convicted of sex offenses. Nor does he state a cognizable equal protection claim as a "class of one." The complaint does not suggest that Plaintiff was singled out for different treatment for no rational reason. See *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (plaintiff alleging class-of-one equal protection claim must plead that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"). The warden articulated the reasons, consistent with the BOP's program statement, for his decision to deny Plaintiff TRULINCS access. Therefore, Plaintiff fails to state an equal protection claim.

Finally, the cases cited by Plaintiff in his memorandum of law are inapposite to his situation (Doc. 10, pp. 1-2). Neither case involved the rights of incarcerated prisoners. Rather, they addressed claims of *former* prisoners, now released but subject to registration requirements as convicted sex offenders, and held that restricting such persons from using social networking internet websites was an unreasonable restriction on their First Amendment rights. *See Doe v. Prosecutor, Marion County, Indiana*, 705 F.3d 694 (7th Cir. 2013); *Doe v. Nebraska*, 898 F. Supp. 2d 1086 (D. Neb. 2012). These cases do not point to a different conclusion than that outlined above.

For these reasons, Plaintiff's complaint does not present a constitutional claim upon which relief may be granted regarding the denial of his access to the TRULINCS electronic messaging system.[2] Accordingly, this action shall be dismissed with prejudice.

## Show Cause Order

When Plaintiff brought his habeas corpus action in which he raised the same issue, he incurred a filing fee of $5.00. When his case was closed, he was ordered to pay this fee no later

---

[2] Other courts that have considered similar claims have come to the same conclusion. *See*, *e.g*., *Solan v. Zickefoose*, No. 13-1860, 2013 WL 3481772 (3d Cir. June 25, 2013) (inmate barred from using TRULINCS after misuse of computer system had no First Amendment, Equal Protection, Due Process, or Administrative Procedure Act claim); *see also Green v. Maye*, No. A-12-CA-065, 2012 WL 1982249 (W.D. Tex. June 1, 2012) (no due process or equal protection violation for denial of TRULINCS access to prisoner who ordered a book on computer hacking); *Hammonds v. Fed. Bureau of Prisons*, No. 11-CV-578, 2012 WL 759886 (N.D. Tex. March 7, 2012) (Administrative Procedure Act does not confer jurisdiction for court to enjoin BOP from denying inmate access to TRULINCS, based on offense conduct of enticement of minor to engage in sexual activity and other offenses); *Parisi v. Lappin,* No. 10-40030, 2011 WL 1045016, at *2-3 (D. Mass. Mar. 18, 2011) (Program Statement 5365.13 is reasonably related to legitimate penological interests to protect the public and reduce crime); *Dunlea v. Fed. Bureau of Prisons,* No. 10-cv-214, 2010 WL 1727838, at *2 (D. Conn. Apr. 20, 2010) (no violation of prisoner's constitutional or federally protected rights when warden refused her TRULINCS privileges because her conviction involved the use of a computer to commit her crimes), *abrogated on other grounds by Analytical Diagnostic Labs, Inc. v. Kusel,* 626 F.3d 135 (2d Cir. 2010).

than September 3, 2013, or face a possible restriction on his ability to file future cases in this Court. *Hoffman v. Federal Bureau of Prisons*, Case No. 13-cv-669-DRH, Doc. 8 (S.D. Ill) (Doc. 8). *See Sloan v. Lesza*, 181 F.3d 857, 859 (7th Cir. 1999) (noting that "[u]npaid docket fees . . . lead straight to an order forbidding further litigation.")  As of the date of this order, Plaintiff has failed to pay the habeas filing fee.

Accordingly, Plaintiff is **ORDERED TO SHOW CAUSE** in writing, no later than November 4, 2013, why this Court should not enter an order prohibiting him from filing any future civil action in this Court until such time as he pays the outstanding $5.00 habeas filing fee for Case No. 13-cv-669-DRH.  Tender by Plaintiff of the full $5.00 for the habeas action to the Clerk of the Court on or before November 4, 2013 shall be deemed by the Court to discharge Plaintiff's duty to show cause under this order.

## Disposition

For the reasons stated above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.  All pending motions are **DENIED AS MOOT.**

Plaintiff is **ADVISED** that this dismissal shall count as one of his allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).  Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable.  *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal.  *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C.

§ 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  October 7, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge
